UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
YURY GOKHBERG,                       :

                                :        **MEMORANDUM AND ORDER**

               Plaintiff,     :         17-cv-00276 (DLI)(VMS)

                        :

        -against-           :

                        :

PNC BANK, NATIONAL ASSOCIATION,   :

                        :

              Defendant.   :
-------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On November 29, 2016, Plaintiff Yury Gokhberg ("Plaintiff") filed this action, alleging retaliation under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") by his then employer, PNC Bank, N.A. ("PNC" or "Defendant"), in New York State Supreme Court, Kings County. *See*, *generally*, Notice of Removal, Docket ("Dkt.") Entry No. 1. On January 18, 2017, Defendant timely and properly removed the action to this Court based on diversity, pursuant to 28 U.S.C. § 1332. *Id.*

Following the close of discovery and unsuccessful mediation, Defendant moved for summary judgment. *See*, Def.'s Notice of Mot. for Summ. J., Dkt. Entry No. 25; Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Mem."), Dkt. Entry No. 26; Def.'s Local Rule 56.1 Statement of Material Facts in Supp. of Mot. for Summ. J. ("Def. 56.1"), Dkt. Entry No. 27. Plaintiff opposed the motion. *See*, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ J. ("Pl. Opp'n"), Dkt. Entry No. 28; Pl.'s Local Rule 56.1(b) [sic] Counter Statement of Material Facts ("Pl. 56.1"), Dkt. Entry No. 29. Defendant replied. *See*, Def.'s Resp. to Pl.'s Local Rule 56.1 Counterstatement of Material Facts ("Def. 56.1 Reply"), Dkt. Entry No. 30; Def.'s Reply to Pl.'s

Opp'n to Def.'s Mot. for Summ. J. ("Def. Reply"), Dkt. Entry No. 31.  For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

The following facts are taken from the parties' Local Civil Rule 56.1(a) statements, affidavits, and exhibits.  Unless otherwise noted, these facts are not in dispute.  As it must, the Court has considered only facts recited by Plaintiff and Defendant in their respective Rule 56.1(a) statements and responses that are established by admissible evidence and disregarded conclusory allegations and legal arguments contained therein.  *See*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion.") (internal quotation marks and citations omitted).

Plaintiff worked as a mortgage loan officer for Defendant from April 2011 until his termination in May 2015.  Def. 56.1 at ¶ 1.  During his employment, Defendant maintained a Code of Business Conduct and Ethics (the "COBE").  *Id.* at ¶ 4.  The COBE required PNC employees, *inter alia*, to "[a]lways act in a professional, honest and ethical manner when conducting . . . activities with and on behalf of PNC."  *Id.* at ¶ 5.  The COBE further prohibited employees from making or asking others to make "a false or misleading entry or report[,]" noting that this rule applied to all entries and reports, whether "financial or non-financial or for internal or external use."  *Id.*  In addition, the COBE addressed expectations as to how PNC employees should deal with confidential information, which was defined as information "about PNC, [PNC] customers, shareholders, colleagues, or suppliers."  *Id.* at ¶ 6.  The COBE provided that "[a]s a general rule, [employees] should assume all information learned on the job is confidential" and directed

employees to use confidential information "only for legitimate business purposes and never disclose to anyone who is not entitled to it." *Id.*

Plaintiff learned of the COBE when he was hired at which time he acknowledged and agreed that he had read it and agreed to comply with it. *Id.* at ¶ 4. Moreover, during his term of employment with PNC, Plaintiff underwent annual training about the COBE and, each year, he acknowledged that he had read and understood the COBE. *Id.* at ¶¶ 8, 10. Plaintiff understood that, if PNC found that an employee had been dishonest, the employee probably would be terminated. *Id.* at ¶ 11.

As a loan officer, Plaintiff was responsible for facilitating and submitting customers' mortgage loan applications. Compl., Dkt. Entry No. 1-2, at ¶ 6. Around late February or early March 2015, he submitted two separate loan applications, from two separate prospective borrowers ("Ms. K" and "Mr. O"; together, "the Prospective Borrowers"), for two separate properties that were adjacent to each other. Def. 56.1 at ¶ 37; Pl. 56.1 at ¶¶ 40, 48. Each application sought a residential loan for a primary residence. Pl. 56.1 at ¶ 41.

At the time Plaintiff submitted the applications, he had known the Prospective Borrowers for many years and, not only knew that they were married, but also knew that they intended to combine the two adjacent properties into one. *Id.* at ¶¶ 43-44. Plaintiff never had encountered a situation where Defendant approved applications for two primary residence loans for the purchase of two separate units to be combined into a single unit. Def. 56.1 at ¶ 36. Nevertheless, Plaintiff submitted each application separately as loans for a primary residence. Pl. 56.1 at ¶ 41. When Plaintiff submitted the loan applications, he did not disclose to PNC that he knew: (1) the Prospective Borrowers; (2) that they were married to one another; and (3) that they intended to combine the properties. Def. 56.1 at ¶¶ 27-28.

3

On March 21, 2015, Defendant made its initial counteroffer to Ms. K for a primary residence loan. *Id.* at ¶ 37; Ex. C. to Def.'s Mot. for Summ. J., Dkt Entry No. 26-3, at 75-78.[1]  By March 27, 2015, Defendant had learned that the Prospective Borrowers were married to one another.  Pl. 56.1 at ¶ 47.  On April 2, 2015, Defendant made a second counteroffer to Ms. K, this time for an investment property loan, not a primary residence loan.  *Id.* at ¶ 48.  The investment property loan carried a lower principal amount and higher interest rate than a primary residence loan. *Id.* at ¶ 49.

Following this second counteroffer to Ms. K, Plaintiff complained to Defendant that its lending practices constituted discrimination based on marital status.  Def. 56.1 at ¶¶ 15, 19.  At his deposition, when asked about the basis for his complaints, Plaintiff testified as follows:

> Q: Nothing else happened?
> A: Absolutely nothing.  I knew for sure they [PNC] were wrong, everything what they're doing, absolutely wrong.  I know law hundred percent on my side and there's absolutely nothing they [PNC] can do.
> Q: And when you say the law was a hundred percent on your side, what do you mean, on your side of what?
>
> [. . . ]
>
> A: If they're not married, it will be no problem for them to purchase two apartments.  Because they're married, they cannot purchase two apartments as a primary residence.
> Q: And that's your understanding.  And where did you get that from, that that was the issue?
> A: New York State have law stated discrimination based on marriage.

*Id.* at ¶ 19 (brackets in original).

It is undisputed that Plaintiff complained about Defendant's lending practices to his direct supervisor, Paul Matuszewski ("Matuszewski"), who was the Market Manager for the Defendant's

---

[1] For ease of reference, all exhibit page number citations are to the numbers generated by the Court's Electronic Case Filing system when documents are filed.

Melville, Long Island branch. *Id.* at ¶ 18; Pl. 56.1 at ¶¶ 38-39. However, the parties dispute whether Plaintiff complained to anyone else. Def. 56.1 Reply at ¶¶ 50-52. Defendant relies on Plaintiff's deposition testimony that he only complained to Matuszewski. Def. 56.1 at ¶ 18. Plaintiff asserts that he also complained to Clayton Robeson ("Robeson"), who was the PNC underwriter assigned to the Prospective Borrowers' loan applications, and Anthony Canonico ("Canonico"), another PNC manager. Pl. 56.1 at ¶¶ 48, 50-52. In addition, Plaintiff argues that some emails he sent containing his complaints were forwarded to other "numerous managers" within PNC, which made them "aware" of his complaints. *Id.* at ¶ 58.

The same day on which Defendant sent its second counteroffer to Ms. K, Plaintiff emailed Robeson at 4:39 p.m. to inform him that the Prospective Borrowers' attorney had requested all communications with respect to their file and that he would send her "all emails." Ex. A to Def.'s Mot. for Summ. J., Dkt Entry No. 26-1, at 86. At 6:28 p.m., Matuszewski emailed Plaintiff, saying: "DO NOT SEND ANY INTERNAL COMMUNICATIONS OUTSIDE THE BANK." Def. 56.1 at ¶ 29. Later that night, between 9:21 to 9:29 p.m., Plaintiff forwarded four internal PNC email threads about the Prospective Borrowers' loan applications to their attorney. *Id.* at ¶ 30; Pl. 56.1 at ¶ 59. The emails included summaries of PNC's in-house legal counsel's opinions and advice concerning the loan applications and the second counteroffer. Def. 56.1 at ¶ 30.

Plaintiff admits that he forwarded the emails. Pl. 56.1 at ¶ 59. However, he denies that he saw the 6:28 p.m. email from Matuszewski before he forwarded the emails later that night. *Id.* at ¶ 61. According to Plaintiff, he did not see Matuszewski's email until the following day. *Id.*

In April 2015, PNC began to investigate Plaintiff after receiving a report of possible violations of the COBE. Def. 56.1 at ¶¶ 21-23; Pl. 56.1 at ¶ 63. PNC assigned Employee Relations Senior Investigator Richard Brizzi ("Brizzi") to the investigation. Def. 56.1 at ¶ 23; Pl. 56.1 at ¶

63.  Initially, the investigation focused on whether Plaintiff breached the COBE by forwarding emails to the Prospective Borrowers' attorney.  Def. 56.1 at ¶ 25.  The scope of the investigation expanded after Brizzi interviewed Plaintiff on April 28, 2015.  *Id.*  Plaintiff admitted during the interview that he knew of the Prospective Borrowers' intent to combine the adjacent properties at the time he submitted their loan applications.  *Id.* at ¶ 35.  After the interview, the investigation focused on both:  (1) whether Plaintiff wrongfully forwarded the emails to the Prospective Borrowers' attorney; and (2) whether he committed a dishonest act in violation of the COBE when he submitted the loan applications.  Pl. 56.1 at ¶ 63.

Following the investigation, Brizzi concluded that termination was appropriate because of Plaintiff's violations of the COBE.  Def. 56.1 at ¶¶ 27-28.  Brizzi cited two reasons for this determination:  (1) Plaintiff had violated PNC's privacy and confidentiality policies when he forwarded the four PNC internal emails after he had been instructed not to forward any PNC communications outside of PNC; and (2) Plaintiff had committed a dishonest act when he submitted the Prospective Borrowers' loan applications without disclosing that they were married and intended to combine the two adjacent properties into one.  *Id.*

Plaintiff claims that his termination was in retaliation for his complaints that Defendant had engaged in discriminatory lending practices.  *See*, Pl. Opp'n at 1-2.  Defendant denies this and argues that Plaintiff's termination was based on his dishonest acts made in violation of the COBE, specifically:  (1) forwarding PNC internal emails after being instructed not to do so; and (2) attempting to circumvent Defendant's policies by not informing Defendant that the Prospective Borrowers were married to each other and planned on consolidating the two properties.  *See*, Def. Mem. at 1, 6.

**LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* (internal quotation marks and citations omitted). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the "difficult burden" of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citation, and emphasis omitted). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citations omitted); *See also, Jeffreys*,

7

426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In the context of employment discrimination and retaliation claims, courts must make special considerations. Specifically, where direct evidence of an employer's retaliatory intent is not readily discernible, district courts must "carefully scrutinize[]" the available evidence for "circumstantial proof[.]" *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Moreover, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . [t]here must be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998). Nevertheless, these special considerations do not reduce the pleading requirements imposed upon plaintiffs necessary to defeat summary judgment motions. *See*, *Baldwin v. Goddard Riverside Cmty. Ctr.*, 53 F. Supp.3d 655, 667 (S.D.N.Y. 2014).

## DISCUSSION

Plaintiff asserts claims under the NYSHRL and NYCHRL based on Defendant's purported retaliation against him for his complaints that Defendant had engaged in discriminatory lending practices. *See*, Compl. at ¶¶ 23, 30-43. Both the NYSHRL and the NYCHRL prohibit discriminatory lending practices based on marital status. *See*, N.Y. Exec. Law § 296-a(1)(a) (2019)

(making it an "unlawful discriminatory practice" for a creditor to discriminate against an applicant for credit with respect to the purchase of a house based on the applicant's marital status); N.Y.C. Admin. Code § 8-107(5)(d) ("It shall be an unlawful discriminatory practice for any . . . bank . . . to whom application is made for a loan, mortgage or other form of financial assistance for the purchase . . . of any housing accommodation . . . [t]o discriminate against such applicant . . . [b]ecause of the [applicant's] . . . marital status[.]").  Both statutes further prohibit employers from taking an adverse employment action in response to complaints by employees of suspected discriminatory practices in violation of the statutes.  *See*, N.Y. Exec. Law § 296(7) (2019) (making it an unlawful discriminatory practice for an employer to retaliate against an employee who has opposed any discriminatory practices); N.Y.C. Admin. Code § 8-107(7) (same).

## I.    NYSHRL

Claims under the NYSHRL are evaluated under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  First, plaintiff must establish a *prima facie* case of retaliation by demonstrating that:  (1) he engaged in protected activity; (2) defendant was aware of the protected activity; (3) defendant took an adverse employment action against him; and (4) there is a causal connection between the protected activity and the adverse employment action.  *See*, *Bentley v. AutoZoners, LLC et al.*, 935 F.3d 76, 88 (2d Cir. 2019) (citation omitted).  The plaintiff's burden at this stage is *de minimis*, and the court's role is limited to determining whether the proffered admissible evidence is sufficient to permit a rational factfinder to infer a retaliatory motive.  *Hicks*, 593 F.3d at 164.

If plaintiff satisfies this initial burden, a presumption of retaliatory intent arises.  The burden then shifts to the employer to "articulate some legitimate, [non-retaliatory] reason for its

action." *Bentley*, 935 F.3d at 88 (internal quotation marks and citation omitted).  Should the defendant meet this burden, the plaintiff must then show, by a preponderance of the evidence, that the proffered reason was merely a pretext for an unlawful motive.  *Id.* (citations omitted).

### A.  Plaintiff's *Prima Facie* Case

Initially, Defendant contends that Plaintiff cannot establish the first element of his *prima facie* case because he did not engage in a protected activity.  *See*, Def. Mem. at 4-5.  "The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (internal quotation marks and citations omitted) (discussing protected activity under Title VII and the NYSHRL).  When an employee communicates to his employer that he believes the employer to be engaged in a discriminatory practice, "that communication *virtually always* constitutes the employee's opposition to the activity."  *Littlejohn v. City of N.Y.*, 795 F.3d 297, 317 (2d Cir. 2015) (internal quotation marks and citation omitted) (emphasis in original).  For a complaint to qualify as protected activity, the plaintiff must have a "good faith, reasonable belief" that he is opposing an unlawful practice.  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although Defendant does not dispute that Plaintiff complained to Defendant about its lending practices, it contends that his complaints were not reasonable or made in good faith.  *See*, Def. Mem. at 4-5.  Under New York law, marital status discrimination is limited to discrimination against those who are married or unmarried and does not apply to discrimination based on being married to a particular person.  *See*, *Christoforou v. Cadman Plaza N., Inc.*, 2009 WL 723003, at *7, n.8 (S.D.N.Y. Mar. 19, 2009) ("The New York Court of Appeals has held that the prohibitions against marital status discrimination under [NYSHRL] and [NYCHRL] prohibit discrimination

10

only on the basis of marital status, *i.e.* discrimination based on the mere fact that a person is married or unmarried."). Defendant knew that Ms. K was married when it provided its initial counteroffer for a primary residence loan because the loan application Plaintiff submitted on behalf of Ms. K indicated she was married. *See*, Def. 56.1 at ¶ 37; Ex. C. to Def.'s Mot. for Summ. J., Dkt. Entry No. 26-3, at 71-74 (Uniform Residential Loan Application for Ms. K). According to Defendant, the loan reclassification from a primary residence loan to an investment property loan did not constitute discrimination based on marital status because it was based on Ms. K's marriage to Mr. O, not on her status as a married individual.

However, whether or not Defendant discriminated against Ms. K based on her marital status is irrelevant. Plaintiff need not prove that his underlying complaint had merit. He needs to prove only that it was motivated by a "good faith, reasonable belief" that Defendant's practice was unlawful. *See*, *Zann Kwan v. Andalex Grp, LLC*, 737 F.3d 834, 843 (2d Cir. 2012) (internal quotation marks and citations omitted). Plaintiff made such a showing here.

Plaintiff established through his deposition testimony that he had a good faith basis for making his complaint, which was based on his understanding of New York State discrimination laws. *See*, Def. 56.1 at ¶ 19. This is supported further by the affidavits Plaintiff submitted from his managers, Matuszewski and Canonico, wherein they attest that it was then and continues to be their belief that Defendant's counteroffer on Ms. K's loan was "a discriminatory act based on marital status." Aff. of Paul Matuszewski, Dkt. Entry No. 28-2, at ¶ 16; Aff. of Anthony Canonico, Dkt. Entry No. 28-3, at ¶ 17. Defendant urges the Court to disregard these affidavits because they contain inadmissible hearsay. *See*, Def. Reply at 2 n.1. However, Matuszewski's and Canonico's statements regarding their beliefs do not constitute hearsay and the Court may consider them. Based on Plaintiff's evidence, a reasonable juror could find that his complaints about Defendant's

11

lending practices were reasonable and made in good faith and that he therefore had engaged in protected activity.

Defendant further contends that Plaintiff fails to establish that Defendant knew about Plaintiff's complaints. *See*, Def. Mem. at 5-6; Def. Reply at 4-5. To satisfy the knowledge prong of his *prima facie* case, Plaintiff need not show that the individual who terminated him knew of his complaints. Instead, he simply must establish "general corporate knowledge" of his complaints. *See*, *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011). It is undisputed that Plaintiff complained to Matuszewski, his direct supervisor. Def. 56.1 at ¶ 18. Matuszewski's knowledge is sufficient to establish general corporate knowledge. *See*, *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp.3d 379, 391 (S.D.N.Y. 2019) (finding that complaints to those in supervisory positions satisfy the corporate knowledge requirement); *Hagan v. City of N.Y.*, 39 F. Supp.3d 481, 502 (S.D.N.Y. 2014) (same). Defendant cites no authority to support its argument that Matuszewski was not a sufficiently high ranking officer such that a complaint to him would impute general corporate knowledge. *See*, Def. Mem. at 4-5. Accordingly, the Court finds that Plaintiff has satisfied the knowledge prong of his *prima facie* case.

Defendant does not dispute Plaintiff's evidence with respect to the remaining elements of a retaliation claim: adverse action and causation. It is well established that Defendant's termination of Plaintiff constitutes an adverse action. *See*, *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (noting that an employer's action toward an employee constitutes an adverse employment action where it is "materially adverse with respect to the terms and conditions of employment") (internal quotation marks and citation omitted). Additionally, the three-month period between Plaintiff's complaint and his termination is sufficiently short to make a *prima facie*

showing of causation through temporal proximity.  *See*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.") (citation omitted).  Accordingly, Plaintiff has established a *prima facie* case of retaliation.

### B.  Defendant's Proffered Reasons

According to Defendant, it terminated Plaintiff because he had violated its policies, not in retaliation for his complaints regarding Defendant's lending practices.  An employer's good faith belief that an employee has engaged in misconduct is a legitimate reason to terminate the employee.  *See*, *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001) (holding that employer's good faith belief that plaintiff had engaged in work related fraud was legitimate reason to terminate plaintiff); *Howell v. Montefiore Med. Ctr.*, 2016 WL 880373, at *6 (S.D.N.Y. Feb. 16, 2016), *aff'd*, 675 F. *App'x* 74 (2d Cir. 2017) (holding that employer's determination that plaintiff had violated employer's policies constituted a legitimate reason to fire plaintiff).

It is undisputed that:  (1) the COBE prohibited employees from making or asking others to make false or misleading entries or reports; (2) Plaintiff submitted the Prospective Borrowers' loan applications as separate applications for primary residence loans, despite: (a) knowing that they were married to each other and intended to combine their two properties; and (b) never knowing of any instance where Defendant approved two separate applications for primary residence loans for the purchase of two separate units that were intended to be combined into a single unit; (3) the COBE prohibited employees from disclosing confidential information about customers; (4) Plaintiff forwarded four internal emails about the Prospective Borrowers (including privileged

13

attorney information) to the buyers' attorney, despite having received instructions from Matuszewski not to do so; (5) Defendant investigated and interviewed Plaintiff after receiving a report of possible COBE violations; (6) upon completing the investigation, Defendant concluded that termination was appropriate because Plaintiff had engaged in dishonesty when he submitted the Prospective Borrowers' loan applications and had violated Defendant's policies when he forwarded the four internal emails to the Prospective Borrowers' attorney. *See*, Def. 56.1 at ¶¶ 5-6, 21-23, 25, 27-30, 36; Pl. 56.1 at ¶¶ 27-28, 41, 43-44, 59, 63.

Based on this undisputed evidence, a reasonable juror could conclude that Defendant terminated Plaintiff because he had violated Defendant's policies. Accordingly, Defendant has met its burden to articulate a non-pretextual, legitimate, non-retaliatory reason for terminating Plaintiff.

### C. Plaintiff's Showing of Pretext

Plaintiff asserts that there are inconsistencies in Defendant's proffered reasons for terminating him. *See*, Pl. Opp'n at 9-14. A plaintiff may demonstrate pretext by showing "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846. According to Plaintiff, Brizzi's notes and internal communications made during his investigation reveal that Defendant did not believe that Plaintiff had violated its policies. Instead, Defendant "engaged in a systematic *creation* of reasons to terminate [his] employment." Pl. Opp'n at 9 (emphasis in original).

While Plaintiff provides evidence of Brizzi's thought process during the investigation, he does not point to any conclusion Brizzi reached that contradicts Defendant's proffered reasons for terminating Plaintiff. *See*, *Id.* at 9-17. For instance, Plaintiff cites to a conversation on Defendant's

internal messaging system between Brizzi and another PNC investigator where they discuss that Ms. K applied for the loan using her maiden name, which was different from Mr. O's last name. *Id.* at 12-13.  On discovering this information, Brizzi said: "So credit reports . . . and [mortgage application] is in her maiden name?  hmmm . . . OK so I don't think we have any dishonesty . . . Will let you know after the call."  *Id.* at 12.  The fact that Brizzi gave Plaintiff the benefit of the doubt as he conducted the investigation does not contradict his ultimate finding that Plaintiff had acted dishonestly.

The case on which Plaintiff relies, *Zann Kwan* 737 F.3d 834, is inapposite.  *See*, *Id.* at 11. There, the employer had filed a statement with the Equal Employment Opportunity Commission ("EEOC") explaining that plaintiff had been terminated because of the employer's change in business focus.  *See*, *Zann Kwan* 737 F.3d at 846.  Later, the plaintiff's direct supervisor testified that plaintiff had not been terminated because of a shift in company focus.  Based on this direct contradiction between the EEOC statement and subsequent testimony, the court held that a reasonable juror could conclude that the employer's explanation for the plaintiff's termination was pretextual.  *Id.* at 847.  By contrast, here, neither Brizzi nor anyone else working for Defendant offered contradictory statements regarding the reasons for Plaintiff's termination.

Plaintiff further contends that Defendant's proffered reasons for his termination were pretextual because Brizzi's investigation was not thorough.  *See*, Pl. Opp'n at 13.  However, an employee's "disagreement with the thoroughness of an investigation is not, in and of itself, sufficient to demonstrate [retaliatory] intent."  *Alexiadis v. New York Coll. of Health Pros.*, 891 F. Supp.2d 418, 431 (E.D.N.Y. 2012).  Moreover, even if Defendant was mistaken in its ultimate conclusion that termination was warranted, such a mistake would not establish pretext.  *See*, *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 417 (2d Cir. 2011) (summary order)

(finding that the possibility that employer had erroneously disciplined plaintiff was not evidence of pretext and affirming summary judgment in favor of defendant); *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp.2d 385, 397 (E.D.N.Y. 2008), *aff'd*, 360 F. App'x 214 (2d Cir. 2010) ("[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.") (citations omitted).

In his deposition, Plaintiff testified that he did not "have any evidence to show that the reason for [Defendant's] decision to terminate [him] was retaliation and not some other reason[.]" Ex. A to Def.'s Mot. for Summ. J., Dkt Entry No. 26-1, at 41.  Discovery has not changed this. Ultimately, Plaintiff fails to offer any evidence that creates a genuine issue of material fact as to whether Defendant's proffered reasons for terminating him were pretextual.  Accordingly, Defendant's motion for summary judgment is granted as to the NYSHRL claim.

## II.   NYCHRL

With respect to NYCHRL claims, the general *McDonnell Douglas* framework still applies. *Gorman v. Covidien, LLC*, 146 F. Supp.3d 509, 529-30 (S.D.N.Y. 2015).  However, district courts "must analyze NYCHRL claims separately and independently from any federal and state law claims" and "constru[e] the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

The NYCHRL's retaliation provision is "broader" than its federal and state counterparts. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (internal quotation marks and citations omitted).  It "protect[s] plaintiffs who oppose any practice forbidden under the law from

conduct reasonably likely to deter a person engaging in such action." *Id.* (internal quotation marks, alteration, and citations omitted).  Nonetheless, even for claims arising under the NYCHRL, the plaintiff must establish a *prima facie* case and, if the plaintiff makes a such a showing, the defendant then has the opportunity to offer legitimate reasons for its actions.  *Id.* at 75-76 (citation omitted).  If the defendant satisfies that burden, summary judgment is appropriate only if no reasonable jury could conclude that the defendant's reasons were pretextual.  *Id.* at 76  (citations omitted).

Plaintiff's retaliation claim also fails under the NYCHRL's broader standard.  For the reasons discussed above with respect to the NYSHRL claim, Plaintiff has established a *prima facie* case of retaliation.  However, the undisputed facts establish that Defendant terminated Plaintiff after investigating his conduct and determining that he had violated Defendant's policies, and Plaintiff has not offered more than bald conclusory statements to rebut this showing.  As such, a reasonable juror could not conclude that Defendant's reasons for terminating Plaintiff were pretextual.  Accordingly, Defendant's motion for summary judgment with respect to the NYCHRL claim is granted.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted in its entirety.


SO ORDERED.

Dated: Brooklyn, New York
      January 6, 2021

/s/
_____
DORA L. IRIZARRY
United States District Judge